IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. H-07-155 |
| | § | |
| AYAD FALLAH, | § | |
| MURAD ALMASRI. | § | |

**MEMORANDUM AND ORDER**

The defendants, Ayad Fallah and Murad Almasri, pleaded guilty to conspiracy to commit health care fraud, in violation of 18 U.S.C. § 371. After an extended sentencing proceeding that included several hearings, this court made a determination of the fraud-loss amount in determining the range under the Sentencing Guidelines, U.S.S.G. § 2F1.1(b)(1). For the reasons stated in detail on the record, the amount of loss is properly measured by what Medicare or Medicaid either allowed or paid, as opposed to the larger billed amount.[1] As other courts to consider the question of how to measure the intended loss in a Medicare fraud case have recognized, the intended loss is not the billed amount because all parties knew that Medicare would not pay the billed amount but would only reimburse a capped

---

[1] The billed amount is the amount the defendants billed to Medicare and Medicaid. Although providers bill at the local market rates, Medicare reimburses services at a fixed or capped rate per service. The government asserted that the "allowed amount" is the fixed or capped rate per trip before the 20% co-pay is deducted. The co-pay may be covered by Medicaid, collected from the patient, or waived by the provider. *See United States v. Miller*, 316 F.3d 495, 505 (4th Cir. 2003) (discussing billed amount and Medicare's fixed-fee schedules); *United States v. Nachamie*, 121 F.Supp.2d 285, 293 (S.D.N.Y. 2000), *aff'd,* 28 Fed.Appx. 13 (2d Cir. 2001) (intended loss was capped rate per service *minus* the 20% co-pay). The paid amount is the amount Medicare actually paid to the defendants.

portion of that amount.  *See, e.g., United States v. Nachamie*, 121 F.Supp.2d 285, 293 (S.D.N.Y. 2000), *aff'd,* 28 Fed.Appx. 13 (2d Cir. 2001) ("The Government places great reliance on defendants' receipt of the remittance statements to support its argument that the defendants knew of the fraudulent scheme and intended to cause a loss to Medicare. The same evidence reveals, however, that the defendants knew that Medicare always reimbursed procedures at a fixed or "capped" rate per procedure.  Thus, defendants' intent was that Medicare reimburse them, at Medicare's capped rate, for the procedures reflected in the submitted bills.); *United States v. Austin,* 432 F.3d 598, 600 n. 2 (5th Cir. 2005) (using amount paid by Medicare as fraud loss); *United States v. Ekpo*, 266 Fed. Appx. 830, 2008 WL 450485, at *3-4 (11th Cir. Feb. 21, 2008) (actual amount of claims paid by Medicare was appropriate loss amount for sentencing); *United States v. Nastasi*, 2002 WL 1267995, at *4 (E.D.N.Y. Apr. 17, 2002) (entire amount paid by Medicare and Medicaid was appropriate amount of loss).[2]

---

[2] The government argues that the intended loss should be the higher billed amount.  In support, the government characterizes the argument for using the lower allowed or paid amount as an impossibility argument.  According to the government, the argument that the intended-loss amount must take into account the fact that Medicare does not pay more than a fixed rate per procedure is an argument that it was impossible for the defendants to be paid the amount billed.  The government points out that impossibility of payment is not a defense to using a higher intended loss amount as the fraud-loss amount.  *See United States v. Klisser,* 190 F.3d 34, 35 (2d Cir.1999).  The government's argument appears to confuse the concept of impossibility with that of intent. The government has not proved, by a preponderance of the evidence, that these defendants intended Medicare to pay more than its fixed rates.

      The government also cites *United States v. McLemore*, 200 Fed. Appx. 342, 344 (5th Cir. 2006), in which the court affirmed a loss calculation based on billed amount based on the rule that no setoff could be applied for the value of services rendered or products provided.  In that case, the trial court recognized but did not analyze the issue and the appellate court did not discuss it.  The rule that setoffs are inappropriate does not apply to the facts of this case.

At the sentencing hearing, this court concluded that the fraud-loss amount for Guidelines purposes was $1,660,113.01. This was the amount paid to the defendants by Medicare and Medicaid for ambulance trips for which there was no valid certificate of medical necessity. The government relied on the documents obtained from the defendants, from the codefendants who purchased the ambulance business, and from the offices of two of the three billers who worked during the relevant period. The government's proposed fraud-loss amount – after adjustments following consultation with counsel for the defendants and considering their objections and arguments – was $2,190,773.01. This court further reduced this amount to take into account the likelihood that there had been other facially valid certificates that either no longer existed or that had been omitted from the calculation but should be included. This court reduced the "paid" amount by $500,000, to take into account that as many as 50 certificates were no longer available because one of the three billers who worked for the defendants had died and her spouse had discarded her papers. This court also reduced the figure by another $30,600, to take into account possible overstated losses in the billings for patients R.B., AA., and M.G. Although the defendants urged that there were other facially valid certificates that should be included, further reducing the intended fraud-loss amount, there was no basis to conclude that either the allowed amount or the paid amount could be less than $1,000,000.00.

The remaining issue is the restitution amount. Under the Mandatory Victims Restitution Act ("MVRA"), sentencing courts must order restitution to victims of "offense[s]

against property . . . committed by fraud or deceit." 18 U.S.C. § 3663A(a)(1) & (c)(1)(A)(ii). A district court acting under the MVRA "shall order restitution to each victim in the full amount of each victim's losses as determined by the court without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). The government bears the burden of proving the amount of loss by a preponderance of the evidence. *United States v. Galloway,* 509 F.3d 1246, 1253 (10th Cir. 2007). The calculation of loss under § 2F1.1 of the Sentencing Guidelines does not necessarily establish loss under the MVRA. *Id.* Unlike loss under the Guidelines, the MVRA requires proof of actual loss and does not allow alternative metrics, such as gain. *See United States v. Hudson,* 483 F.3d 707, 711 (10th Cir.2007). No alternative metric is used in this case.

When calculating loss under the MVRA, absolute precision is not required. *United States v. Ahidley,* 486 F.3d 1184, 1189 (10th Cir.2007); *United States v. Teehee,* 893 F.2d 271, 274 (10th Cir.1990) (noting that "[t]he determination of an appropriate restitution amount is by nature an inexact science."). A sentencing court may resolve restitution uncertainties "with a view towards achieving fairness to the victim," so long as it still makes a "reasonable determination of appropriate restitution" rooted in a calculation of actual loss. *United States v. Vaknin,* 112 F.3d 579, 587 (1st Cir.1997) (quotation omitted). Accordingly, "in the case of fraud or theft, the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the information available." *United States*

*v. Jackson,* 155 F.3d 942, 949 n. 3 (8th Cir.1998) (quotation omitted); *United States v. Gallant.,* 37 F.3d 1202, 1252 (10th Cir. 2008).

In this case, the record supports a restitution amount of $1,660,113.01, the same figure as the intended loss amount. The intended and actual loss amounts are the same. The actual loss amount is the amount paid to the defendants by Medicare and Medicaid for ambulance trips that did not have the required certificates of medical necessity. This amount was reduced to take into account the defendants' arguments that some of the trips did have facially valid certificates that were no longer available and that other trips had been improperly treated as lacking such certificates. The government has met its burden of proving this loss.

The defendants, Ayad Fallah and Murad Almasri, are jointly and severally liable to pay Medicare and Medicaid a total amount of $1,660,113.01 in restitution. Payments to Medicare represented 81.3% of the total paid amount without certificates of medical necessity; payments to Medicaid represented 18.7% of this amount. Applying these percentages to the restitution figure of $1,660,113.01 results in $1,349,672 due to Medicare and $310,441.01 due to Medicaid. Each defendant, Ayad Fallah and Murad Almasri, is jointly and severally liable to pay restitution in the amount of $1,349,672 to Medicare and $310,441.01 to Medicaid.

Having assessed the defendants' ability to pay, payment of the total criminal monetary penalties is due as follows: each defendant must make a lump sum payment of $100 due

immediately. The balance is due in equal monthly installments of $300, to begin 60 days after the entry of judgment. The defendants' restitution obligation is not affected by any restitution payments that may be made by other defendants in this case, except that no further payment is required after the sum of the amounts paid by all defendants has fully covered all the compensable losses.

SIGNED on December 1, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge